UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL PEARL,

        Plaintiff,

        v.

DCM SERVICES, LLC,

        Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
2:21-cv-05320-OEM

**ORELIA E. MERCHANT, United States District Judge:**

Plaintiff Michael Pearl ("Plaintiff" or "Pearl") originally brought this action in Suffolk County Court against defendant DCM Services, LLC ("Defendant" or "DCM"). Plaintiff brings causes of action under the Fair Debt Collection Practices Act ("FDCPA") alleging that DCM violated the FDCPA by providing information regarding Plaintiff's debt to third-party vendors. Defendant removed this action to federal court, asserting that removal was proper under 28 U.S.C. § 1441(b) because this Court has jurisdiction over Plaintiff's FDCPA claims. Upon review of the parties' filings, for the reasons set forth below, the Court finds that Plaintiff lacks standing under Article III of the Constitution. Accordingly, this action is remanded to state court.

## BACKGROUND

Plaintiff commenced this lawsuit in Suffolk County Court on August 12, 2021, and on September 24, 2021, Defendant removed this action to this Court. *See* Notice of Removal & Complaint ("Compl."), ECF 1.

On September 25, 2021, Plaintiff filed a letter requesting a pre-motion conference to file a motion for remand. Pre-Motion Conference Letter, ECF 7. Plaintiff argues that this Court

lacks subject matter jurisdiction over this action under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021) because "the violation of a federal statute, alone, is not enough to confer standing under Article III of the Constitution." *Id*. at 1.

On October 1, 2021, Defendant filed a letter in opposition to Plaintiff's request for a pre-motion conference. Defendant argues that Plaintiff has Article III standing because transmittal of a consumer's personal information to a mailing vendor bears a sufficiently close relationship to a harm that American courts have long recognized as cognizable. Defendant's Pre-Motion Conference Opposition, ECF 8 at 2 (citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.* ("*Hunstein II*"), 994 F.3d 1341, 1345 (11th Cir.), *opinion vacated and superseded on reh'g*, 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021), *and on reh'g en banc*, 48 F.4th 1236 (11th Cir. 2022)).

On October 19, 2021, Judge Cogan held a status conference and ordered that both parties submit letter memoranda explaining their positions on this standing dispute in further detail. Plaintiff and Defendant both submitted letter memoranda on November 2, 2021. *See* Defendant's Nov. 2, 2021 Letter, ECF 12; Plaintiff's Nov. 2, 2021 Letter, ECF 13. Noting that "Judge Brown dismissed no less than seven separate *Hunstein*-based FDCPA cases" for lack of Article III standing under *TransUnion*, Plaintiff argues that this Court should adopt the same approach and find that "Defendant cannot establish a particularized or concrete injury sufficient for removal." Plaintiff's Nov. 2, 2021 Letter at 1-2. Plaintiff again referred the Court to *TransUnion*, writing that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id*. (quoting *TransUnion*, 141 S. Ct. at 2205).

2

Defendant advocates for a different interpretation of *TransUnion*. Defendant observed that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." Defendant's Nov. 2, 2021 Letter at 2 (quoting *TransUnion*, 141 S.Ct. at 2200). According to Defendant, "a plaintiff need only show that his alleged injury is similar in kind to the harm addressed by a common-law cause of action, not that it is similar in degree." *Id*. at 4 (quoting *Hunstein II*, 17 F.4th at 1023). Defendant urges this Court to follow *Hunstein II* and find that disclosure of private information to a private party is a concrete harm, therefore giving rise to Article III standing, because it is similar in "kind" to the tort of public disclosure of private facts, though different in "degree." *Id*. at 4.

This action was reassigned to this Court on July 5, 2023.

## DISCUSSION

During the pendency of this case, the Eleventh Circuit reheard *Hunstein II* en banc and soundly rejected Defendant's standing argument. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.* ("*Hunstein III*"), 48 F.4th 1236, 1242 (11th Cir. 2022) ("The new harm Hunstein alleges—a disclosure to a private party—is not similar to the old harm cited, disclosure to the public. That traditional tort requires publicity, and Hunstein alleges none. Without publicity, none of the exposure targeted by the tort of public disclosure is at play. He thus has failed to allege a concrete harm, and has no standing to bring his suit."). This Court finds the holding in *Hunstein III* persuasive and finds that Plaintiff has not alleged a concrete injury giving rise to Article III standing.

The Constitution empowers federal courts to adjudicate "cases" and "controversies." U.S. Const. Art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of

3

a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (internal citations omitted). "An injury in fact must be concrete," in that it is "real, and not abstract." *Id*. at 340 (internal quotation marks omitted).

In *TransUnion*, the Supreme Court held that the violation of a federal statute, without an associated concrete injury, was merely "an injury in law" and "not an injury in fact" as required under Article III. *TransUnion*, 141 S. Ct. at 2205. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. (emphasis in original). "No concrete harm, no standing." *Id*. at 2200. "[I]ntangible harms" can constitute concrete harms, particularly "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. at 2204.

In the Second Circuit, there is a "well-settled doctrine that a court must satisfy itself that it has subject matter jurisdiction and may at any time in the course of litigation consider whether such jurisdiction exists." *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133 (2d Cir. 2006); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

"Although standing is a fundamental jurisdictional requirement, it is still subject to the same degree of proof that governs other contested factual issues. Thus, at the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). At the pleading

stage, a complaint merely "must allege facts that affirmatively and plausibly suggest that [plaintiff] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  Here, the allegations made in Plaintiff's complaint fall short of this standard.

Defendant's *Hunstein*-based standing argument is unavailing.  Defendant argues that the harm alleged by Plaintiff—the disclosure of his personal information to a mailing vendor—is close enough in kind to the tort of public disclosure of private facts to grant Article III standing.  Not so.  As the Eleventh Circuit observed upon rehearing *Hunstein II* en banc, "[t]hat traditional tort requires publicity"—and the dissemination of information within a company and its vendors does not rise to the level of publication.  *Hunstein III*, 48 F.4th at 1242.  The Supreme Court alluded to this distinction in dicta in *TransUnion*:

> [P]laintiffs also argue that TransUnion 'published' the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument […] is unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications. […] [P]laintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently 'close relationship' to the traditional defamation tort to qualify for Article III standing.

*TransUnion*, 141 S. Ct. at 2210 n.6 (citations omitted).  This Court finds the reasoning in *TransUnion* and *Hunstein III* compelling: disclosure of private information to a mailing vendor and "other third-party entities by using skip trace services, bankruptcy, probate, and 'scrubbing' services," Compl. at 6, does not involve publication and therefore does not have a sufficiently "close relationship" to public disclosure of private facts to confer Article III standing.  Numerous other cases before the Eastern District of New York under the so-called "mailing vendor" theory of liability have been dismissed on similar grounds, including at least one action brought by Plaintiff himself.  *See, e.g.*, *Ciccone v. Cavalry Portfolio Servs., LLC,* No. 21-CV-2428 (JS)

5

(JMW), 2021 WL 5591725, at *4 (E.D.N.Y. Nov. 29, 2021); *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 64 (E.D.N.Y. 2021).

Defendant seeks to differentiate this case from *In re FDCPA Mailing Vendor Cases* by invoking Plaintiff's request for "actual damages" in the complaint. Defendant's Nov. 2, 2021 Letter at 7 (quoting Compl. at 8). But the mere inclusion of this stock language in the complaint does not confer Article III standing. A complaint "must allege facts that affirmatively and plausibly suggest that [plaintiff] has standing to sue." *Amidax Trading Grp.*, 671 F.3d at 145. The inclusion of these two words in Plaintiff's demand, without further substantiating allegations, does not meet this burden.

## CONCLUSION

Plaintiff has not sufficiently alleged a concrete and particularized injury in fact giving rise to Article III standing. As such, the Court lacks jurisdiction over Plaintiff's claims, and the case is therefore remanded to state court.

**SO ORDERED.**

      /s/ Orelia E. Merchant
**ORELIA E. MERCHANT**
**United States District Judge**

Dated: Brooklyn, New York
      September 10, 2023.